KIRVEN *v.* BLACKETT *et al.*

No. 17466. ARGUED MAY 15, 1951—DECIDED JUNE 13, 1951—REHEARING DENIED JULY 10, 1951.

*Marvin O'Neal Jr.,* and *Douglas C. Lauderdale Jr.,* for plaintiff.

*Mitchell & Mitchell,* for defendants.

ALMAND, Justice. Clarence Kirven filed a suit against W. L. Blackett and others, seeking to rescind the sale of certain real-estate lots sold to him by the defendants. In addition to praying that the contract of sale be rescinded, the plaintiff prayed for the recovery of the purchase money that he had

paid to the defendants; for a named sum as attorney fees; and that, upon payment of such refund, the deed conveying the property back to the defendants now in the registry of the court be delivered to the defendants. The general demurrers of the defendants were sustained, and the case is here on exceptions to the order sustaining the demurrers and dismissing the petition.

The petition stated substantially the following case: In June, 1950, the defendants owned certain described lots in Fulton County. The petitioner sought to purchase said lots through the defendants' agent, Ed. S. Grant, and was shown a map of the lots and other lots already sold, and all claimed by the defendants to be suitable for the erection of dwelling houses thereon. The defendants agreed to sell to the petitioner said lots for the purpose of building houses thereon, and the petitioner's agent visited the location of the lots, and on the location the defendants' agent pointed out the lots for sale and other lots which had been sold to other persons for building purposes, as well as some houses which had already been erected on several of the lots. The lots purchased have little value of any kind, and were of little value to the petitioner except as lots upon which dwelling houses could be erected; and the defendants knew that the petitioner was interested in purchasing said lots for the purpose of building houses thereon, and for no other purpose, it being the purpose of the petitioner in buying the lots to erect dwellings thereon and sell to the public, and the defendants knew of these facts. The defendants' agent, by showing the plaintiff's agent houses erected on other like lots in the vicinity, had virtually represented "by said illustration the desirability of the lots herein described as building lots." Thereafter the petitioner agreed to buy the lots, and on June 19, 1950, paid the said agreed consideration of $5000 and received a deed to the lots from the defendants. On July 28, 1950, the petitioner learned that the Department of Public Health of Fulton County, which had lawful authority to do so, had issued a ruling to the effect that the lots sold to him by the defendants "were not suitable for the installation of septic tanks for the reception of sewerage from dwelling houses which might be erected on said lots," which ruling had been communicated to the defend-

ants in March, 1948. Paragraph 9 (a) of the petition alleged as follows:

"Notwithstanding the said defendants' knowledge that septic tanks could not be installed on said lots, as aforesaid, and their knowledge that dwelling houses could therefore not be erected on said lots because there is no way of disposing of sewerage at, on, or near said lots, and their knowledge that no person would purchase a dwelling house or lot upon which to erect a dwelling house without means of disposing of sewerage from said house, and their knowledge that the said lots would therefore be worthless for the purpose for which petitioner had purchased them, as aforesaid, the defendants failed to inform petitioner of the aforesaid action of the Public Health Department of Fulton County, Georgia, forbidding septic tanks as aforesaid, and defendants permitted petitioner to purchase said lots from them as aforesaid."

It was alleged that the petitioner at the time of the purchase had no knowledge that septic tanks would not be permitted on the lots bought, and would not have purchased the lots if he had so known, and that the silence of the defendants and their agent as to the action of the public-health authorities amounted to a fraud upon the petitioner. Upon learning of the alleged fraud, the petitioner rescinded the contract of purchase and tendered to the defendants a deed reconveying the lots to the defendants, and demanded the return of the purchase money, which tender and demand were refused. It was alleged that the conveyance had been deposited in the registry of the court.

There is no allegation in the petition that the defendants made any express representation whatever as to the use or non-use of septic tanks on the lots sold, nor that the plaintiff's agent ever sought any information in this regard from the defendants or any one else. If the petition states a cause of action for rescission, it must be on the basis, (a) that the available use of septic tanks on the erection of houses on the lots was a material fact in inducing the sale; (b) that the defendants knew or should have known that the plaintiff would not have purchased the lots if he had known that septic tanks could not be used in connection with the houses to be erected; (c) that the defendants had knowledge that septic tanks could not be used

in connection with the houses to be erected; and (d) that the defendants intentionally suppressed or concealed these facts. In other words, the petitioner claims that, under the facts alleged, the defendants were duty bound to disclose to him the fact that septic tanks could not be used on the lots, and their silence amounted to actual fraud, which gives the plaintiff the right to rescind the contract on discovery of the concealment of a material fact which induced the sale.

Code § 37-704 provides that "Suppression of a fact material to be known, and which the party is under an obligation to communicate, constitutes fraud." Code § 105-302, in defining the ingredients of an action for deceit, provides that mere concealment of a material fact, unless done in such a manner as to deceive and mislead, will not support an action for deceit. Section 96-203, which deals with circumstances in which a contract of sale may be set aside for fraud, declares: (2) "When, from any reason, one party has a right to expect full communication of the facts from the other." (3) "Where one party knows that the other is laboring under a delusion with respect to the property sold or the condition of the other party, and yet keeps silent."

Applying the above principles of law to the facts of this case, we are of the opinion the petition does not show actual fraud. It does not appear from the petition that the defendants' agent was informed that the plaintiff would not purchase the lots if he could not install septic tanks thereon. It does not appear from the allegations, other than as a conclusion of the pleader, that there were not other methods for disposal of sewage. The plaintiff's agent, though viewing the terrain of the lots, made no inquiry as to how the sewage would be disposed of, and there were no express or implied representations by the defendants or their agent in this regard. It is alleged in the petition that the plaintiff's agent viewed dwelling houses which had been erected on the lots sold by the defendants in the same general neighborhood as the lots bought by the plaintiff; but it does not appear from the allegations that the defendants' agent made any express or implied representations as to how the sewage was disposed of from these houses, or that the plaintiff's agent made any effort to determine how these other

houses disposed of their sewage. Before it could be said that the defendants' failure to disclose to the plaintiffs that the public-health authorities had made a ruling prohibiting the disposal of sewage from these lots by septic tanks amounted to fraud, the fact concealed must not only be material, but one that the defendants were under an obligation to disclose, or that the plaintiff had a right to expect a full communication of the facts, or that the defendants knew that the plaintiff was laboring under a delusion with respect to the property sold. The defendants were bound to communicate to the vendee their knowledge of material facts, provided they knew the vendee was ignorant of them. The law does not afford relief to one who suffers by not using the ordinary means of information, whether the neglect is due to indifference or credulity. "When the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means he will not be heard to say, in impeachment of the contract of sale, that he was deceived by the vendor's representations." *Marietta Fertilizer Co.* v. *Beckwith*, 4 *Ga. App.* 245, 249 (61 S. E. 149). Bearing in mind that the parties did not stand in a confidential relationship to one another, we cannot say that the pleaded facts warrant the conclusion that the defendants' failure to inform the plaintiff's agent of the ruling of the county public-health authorities amounted to actual fraud, or concealment of a material fact, especially where neither the defendants nor their agent had done anything to mislead the plaintiff as to the available use of septic tanks on the lots, and the information as to the ruling of the public-health authorities was just as available to the plaintiff as to the defendants. See, in this connection, *Littlejohn* v. *Drennon*, 95 *Ga.* 743 (22 S. E. 657).

Our ruling in this case is not contrary to the ruling in *Reeves* v. *Williams & Co.*, 160 *Ga.* 15 (127 S. E. 293), in that the facts in that case are materially and substantially different from those in this case. There it was held that, under the facts, the failure to speak amounted to fraud by silence. There a merchant, on the representation of the landlord as to the nature of the tenancy between the landlord and the tenant, and at the

request of the landlord, furnished supplies to the tenant for which the landlord was to pay, but during the time in which the supplies were being furnished the landlord and tenant changed the nature of the tenancy, but the landlord never informed the merchant of this change in relationship, and thereafter sought to deny any liability to the merchant for the supplies furnished the tenant. Clearly there was a duty to speak on the part of the landlord, by reason of the prior transaction between the parties, and the court held that the landlord was under a duty to inform the merchant of the change in relationship between the landlord and the tenant when the landlord knew that the merchant was supplying the tenant under the original agreement, and that not to so inform the merchant of such change amounted to fraud by silence. In the instant case, the alleged facts were insufficient to place a duty upon the sellers to speak.

Nor is the ruling contrary to *Fenley* v. *Moody*, 104 *Ga.* 790 (30 S. E. 1002). In the *Fenley* case, the plaintiffs, in an action for deceit, alleged that they purchased a tract of land on the express representations of the defendant that the property owners on both sides of the street upon which the land fronted had by mutual agreement donated a designated number of feet of their respective holdings in order to widen the street, and that the county commissioners had accepted the donation and agreed to widen the street, and by order agreed to lengthen the street and to repair and make the street passable. It was alleged that these representations were wilfully made to induce the plaintiffs to enter into the contracts of purchase, and were made with intent to deceive. In holding that the petition was good against a general demurrer, the court in its opinion stated that the plaintiffs were not guilty of laches in failing to examine the records of the county commissioners to see if the representations as to the action of the commissioners were true or false. In the instant case, the defendants made no express or implied representations as to any action by the county health authorities, and our ruling, that silence of the defendants when there was no duty on them to speak did not constitute fraud, is entirely in harmony with the *Fenley* case. Nor is the ruling in *Elliott* v. *Marshall*, 179 *Ga.* 639 (176 S. E. 770)—that the question

whether a complaining party could have ascertained the falsity of the representations by proper diligence is ordinarily a question to be determined by the jury—applicable here, for the reason that our ruling is that the plaintiff's petition failed to allege facts which showed that the defendants' silence amounted to actual fraud, and is not based on mere negligence of the plaintiff in failing to ascertain the facts about which the defendants made no representations.

The court committed no error in sustaining the general demurrers and dismissing the petition.

*Judgment affirmed. All the Justices concur, except Head, J., who dissents.*